IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Jerry R. Evans, )<br>            Plaintiff, )<br>)<br>vs. )<br>)<br>Banks Construction Company, )<br>)<br>            Defendant. )<br>) | Civil Action No.2:11-2526-CWH-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 24.] The plaintiff has pled claims pursuant to the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and state law claims for breach of contract and wrongful discharge in violation of public policy.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff, a sixty-three-year-old male, was employed by the defendant on two occasions, once, from 2005 to 2008, as a truck driver and dispatcher, and a second time as a contract truck driver during the summer of 2009. (Def. Exs. A, G.) His first stint of employment with the defendant ended as the result of economic considerations and as a part of a reduction-in-force. (Def. Ex. D.) That termination is not at issue in this case.

The plaintiff was rehired in June 2009, as part of a Contract Driver Program, when

the economy made some improvement. (Leviner Aff. ¶ 7.) He was hired pursuant to a written contract, which provided for an indefinite term of employment. (Def. Ex. G § 2.1.) The defendant contends that the new Contract Driver Program, however, quickly proved uneconomical and that it eliminated the program in the summer of 2009. (Leviner Dep. at 41.) Throughout, the plaintiff continued to ask for full-time work, even as the defendant was pairing back. (Whigham Dep. at 46-47, 52.)

The plaintiff contends that he cannot drive at night due to a vision disability and that he requested such disability be accommodated with only day-time driving hours. The defendant has indicated that it so accommodated the request.

The plaintiff has put forward some evidence that as he raised concerns about his treatment and threatened to make a charge of discrimination at the Equal Employment Opportunity Commission, he was told that there would be consequences. (See Whigham Dep. at 67-68, 73-74.)

On or about the end of July, the defendant contends that the plaintiff was released from employment as a result of the decision to end the Contract Driver Program. (Def. Ex. R.)

## **APPLICABLE LAW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

3

The defendant liberally interprets the language in the Complaint to suggest that the plaintiff makes three ADA related claims: (1) failure to accommodate, (2) discriminatory discharge, and (3) retaliation. The plaintiff has also pled a claim pursuant to the Age Discrimination in Employment Act (ADEA) and state law claims for breach of contract and wrongful termination in violation of public policy. The defendant has expressly not moved for summary judgment as to any retaliation claim pursuant to the ADA, however. (Def. Mem. Supp. Summ. J. at 2 n.1.) Indeed, much of the plaintiff's most impactful evidence is of this kind. (Whigham Dep. at 67-68, 73-74.) It should be allowed to proceed, therefore – the retaliation claim.

The plaintiff has made no defense of any ADEA claim in response to summary judgment. That claim is considered abandoned and should be dismissed. Truthfully, the plaintiff appears to abandon any ADA discriminatory discharge claim as well. His ADA discharge allegations are all argued within the context of a failure to accommodate claim. (See Pl. Resp. at 5-9.) If more was intended, he has not done much to distinguish or apportion his arguments between the two causes – to accommodate and for discharge.[1]

## I.     ADA Failure to Accommodate

The defendant first contends that the plaintiff's failure to accommodate claim should be dismissed. The plaintiff claims that he requested the defendant accommodate his night vision problems by scheduling only day time hours.

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Relevant here, an employer must make

---

[1] To the extent he means to continue in a discriminatory discharge claim, he has not produced any evidence that meets the legal requirements for it.

4

"reasonable accommodations" for a disabled employee, unless the company can demonstrate that the accommodation "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). "The ADA does not require that the employer go out of his way to provide an accommodation for a disabled employee, but only requires that accommodations are 'reasonable.'" *Schneider v. Giant of Md., LLC*, 389 Fed. Appx. 263, 271 (4th Cir. 2010) (citations omitted). "The plaintiff bears the burden of identifying an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Shin*, 369 Fed. Appx. at 481. Absent direct evidence of discrimination, a plaintiff may rely on the burden shifting approach, first enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to make his case.[2] *See Edmonson v. Potter*, 118 Fed. Appx. 726, 728 (4th Cir. 2004).

To establish a *prima facie* case for a failure to accommodate under *McDonnell Douglas*, the plaintiff must show: (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ; and

---

[2] Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If he succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48.

5

(4) that the employer refused to make such accommodations. *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir.2001).

The defendant ably challenges the fourth element. The plaintiff repeatedly alleges that he was not given night time driving hours. (See Pl. Resp. at 7-9.) The plaintiff has consistently identified day shift hours as the only requested accommodation. (Pl. Dep. at 178.) Inconveniently, however, the only evidence of record indicates that the defendant did accommodate the plaintiff by scheduling him for day-shift driving during his tenure as a Tri Axle driver, in the summer of 2009. (See Whigham Dep. at 39, 65; Pl. Dep. at 238-39.) The plaintiff has not cited to any other evidence that he was required to drive at night after he allegedly requested not to. He only alleges it and, even then, non-specifically. No reasonable jury could conclude anything other than that the defendant accommodated his request.

In truth, the plaintiff, in argument, appears to use his actual night visibility problems as a kind of pretext to complain about not being given full time work. (See, e.g., at 7 "back on the schedule"; Pl. Dep. at 201-02; Leviner Aff. ¶ 8.) In other words, knowing that full time schedule was not any sort of necessary accommodation for his vision problems, he uses day time hours as a kind of shoehorn. Full-time work consistently appeared to be the goal. (Whigham Dep. at 46-47, 52.) Unfortunately, there is no evidence that he ever drove at night, the only accommodation at issue.

The plaintiff's ADA accommodation claim should be dismissed.

## II.     Wrongful Discharge in Violation of Public Policy

The defendant has next moved for dismissal of the plaintiff's claim that he was discharged wrongfully in violation of the public policy of the State of South Carolina. The

plaintiff contends that his employment was terminated "after he . . . reported discrimination due to his disability and to exercise his right to file a charge of discrimination with the Equal Employment Opportunity Commission." (Pl. Resp. at 11.) Whatever the vagaries in South Carolina law on the subject, this allegation is not a cognizable basis for a wrongful discharge claim.

South Carolina recognizes the doctrine of employment at-will.[3] *See Prescott v. Farmers Tel. Coop., Inc.*, 516 S.E.2d 923 (1999); *Shealy v. Fowler*, 182 S.C. 81, 188 S.E. 499 (1936). Under this doctrine, either party may terminate the employment contract at any time, for any reason, or no reason at all. *See Prescott*, 516 S.E.2d at 925; *Baril v. Aiken Reg'l Med. Ctrs.*, 573 S.E.2d 830 (S.C. Ct. App. 2002). South Carolina courts, however, have carved out exceptions. *See Small v. Springs Indus.*, Inc., 388 S.E.2d 808 (1990) (Small II ); *Davis v. Orangeburg-Calhoun Law Enforcement Comm'n*, 542 S.E.2d 755 (S.C. Ct. App. 2001).

One such exception arises when the discharge of an at-will employee constitutes a violation of a clear mandate of public policy. *See Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 214 (S.C. 1985); *see also Lawson v. S.C. Dept. of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000); *Barron v. Labor Finders of South Carolina*,682 S.E.2d 271, 274 (S.C. Ct. App. 2009) (emphasizing that Lawson limited claims of wrongful discharge in violation of public policy to those situations where an employee was asked to violate the law or where the termination violated criminal law). Although not definitively so, the exception has been

---

[3] The Court has concluded, *infra*, that the plaintiff's contract was not at-will, insofar as it was subject to a written contract which included a termination for cause provision. In a certified question from this district court, the South Carolina Supreme Court ruled that the presence of a termination notice in a written contract does not make unavailable a claim for wrongful discharge. *Stiles v. American General Life Ins. Co.*, 516 S.E.2d 449, 453 (S.C.1999). As will be discussed, however, that claim should still be dismissed.

mostly and narrowly available, typically, only "when an employer requires an employee to violate the law or the reason for the employee's termination was itself a violation of criminal law." *Lawson v. S.C. Dept. of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000); *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011). The Court has always been of the view, however, and not solely in light of the recent decision in *Barron*, that such were not the exclusive circumstances implicating the exception. It is a somewhat muddied terrain.

Importantly, however, it is well established that the exception does not extend to situations where the employee has an existing statutory remedy for wrongful termination. *See Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18 (1992) (employee allegedly terminated in retaliation for filing complaint under Fair Labor Standards Act had existing statutory remedy for wrongful termination). The plaintiff could not be more plain that the basis for his wrongful discharge and ADA claims are the same. (See Pl. Resp. at 11.) The ADA affords all meaningful remedy for the wrongs alleged. No claim for wrongful discharge can lie. *Id.*

## III.    Breach of Contract

The defendant also moves for dismissal of the plaintiff's breach of contract claim. It is undisputed that the plaintiff and defendant entered into a written contract, on June 15, 2009. (Def. Ex. G.) And, while the term of that contract was indefinite (Def. Ex. G ¶ 2.1, 4.1), it included a Termination section. In relevant part, that section reads:

> 4.3 Company may at any time terminate the employment of Employee for malfeasance, misfeasance, or nonfeasance in connection with the performance of Employee's duties, the cause to be specified in the notice of termination. Without limiting the generally of the foregoing, the following acts during the Term shall constitute grounds for termination of employment hereunder.

(Def. Ex. G 4.3.)

To the Court, this provision seems to plainly modify the at-will status of the plaintiff's employment. The notice of termination provision has created a kind of for-cause requirement and concomitant notice obligation. *Id.* But, the defendant has represented that the plaintiff was, in fact, released as a result of its decision to end a Contract Driver Program (Def. Mem. Supp. Summ. J. at 5; Def. Ex. R) and not for any "malfeasance, misfeasance, or nonfeasance," as the contract requres (Def. Ex. G 4.3). This detail implies breach. Accordingly, the breach of contract claim should not be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for partial summary judgment [Doc. 24] be GRANTED in part and DENIED in part. Specifically, the defendant's motion as to the plaintiff's claims pursuant to the ADEA, for a failure to accommodate and for discriminatory discharge under the ADA, and for wrongful discharge should be GRANTED. The defendant's motion as to the plaintiff's claim for breach of contract should be DENIED. Additionally, the plaintiff's claim for ADA retaliation should survive, insofar as it has not been challenged.

                                            IT IS SO RECOMMENDED.

                                            s/Bruce H. Hendricks
                                            United States Magistrate Judge

June 11, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).